## DECLARATION OF JOEY L. BLANCH

I, JOEY L. BLANCH, declare as follows:

5. I am an Assistant United States Attorney for the Central District of California. I am one of the attorneys assigned to represent the United States in United States v. Stanley Dan Reczko, III, CR 07-1221-GHK.

6. On May 21, 2014, after receiving the Court's May 20, 2014 order directing the parties to meet and confer regarding dates for the hearing regarding the motion to suppress and trial, I contacted defendant Stanley Dan Reczko ("defendant") via an email to his paralegal, Kathleen Caulfield. I asked defendant how he wished to meet and confer. I suggested that we could meet via telephone, or if he wished to meet in person at the U.S. Attorney's Office, which would also give him an additional opportunity to review evidence, if he wished.

7. On May 25, 2014, I received a responsive email from defendant, stating that he did not want to meet at the U.S. Attorney's Office, but suggesting we could meet in lockup or at MDC. He also wished to meet without a case agent present. I responded that I would attempt to arrange the meeting at MDC, but that I would not meet with him without an agent present.

8. On May 26, 2014, I received another email from defendant, with a list of fourteen topics, some duplicates, that he wished to discuss at the meeting. That email is attached hereto as Exhibit A.

9. I met with defendant, at MDC, on May 29, 2014. SA Olga Sagalovich and Ms Caulfield were also present. We tentatively agreed to an evidentiary hearing in September, 20014 and a trial date in October, 2014, and agreed on specific facts regarding

excludable time, including the outstanding defense forensic exam, his ongoing discovery demands, outstanding motions, and the time required to obtain witnesses from outside the U.S.

10. That same day, shortly after the meeting with defendant, I received an email from Ms Caulfield, stating that defendant had changed his mind, and wanted to go to trial in September, instead of October. I responded that I needed to check with the witnesses to see if they were available to travel on the dates discussed - both the September and the October dates - and get back to him. Those communications are attached as Exhibit B.

11. A few minutes later, I realized that Don Ashley, Office of International Affairs, stationed in the Philippine, had cautioned that we should give the Philippine government approximately six months to re-approve travel for witnesses Jennifer Tadena, Anita Suico, Dionardo Carlos, Jose Ramon Ugarte and Mabert Impas, Jr. Because these witnesses were or had been Philippine government employees, and that employment was the subject of their testimony, the government had been required to seek, via an MLAT request, the Philippine government's permission for them to travel and testify at the proceedings in this case. Mr. Ashley told me that this permission hinged on the trial date -- when a new trial date is set, the Philippine government will need to re-authorize these witnesses to travel and testify. This email is attached as Exhibit C. I had not previously understood that the witnesses would need to be reauthorized.

12. I immediately contacted Ms Caulfield again, asking that she provide this information to defendant, and ask him how he would like to proceed, given that he had previously represented that some

of these witnesses would also be needed as defense witnesses. I also explained that this estimate came from Don Ashley. These emails are attached as Exhibit D.

13. I did not hear back from defendant until after 8:00 on Friday, May 30, 2014. I received an email from Ms Caulfield stating that defendant was going to file a motion for an immediate trial or to dismiss the indictment. That email is attached as Exhibit E.

14. Between June 2-10, 2014, I communicated with defendant's stand-by counsel, David Kaloyanides, regarding possible trial dates. He informed me that he would be unavailable for parts of October 2014 due to a short child pornography trial, that he was entirely unavailable in January, 2015 due to a complex drug case before the Honorable Judge Virginia A. Phillips, and that he had a complex mortgage fraud case before Judge Phillips in March 2015. He has a trial scheduled that would make him unavailable for the entire month of November 2014, although that could be continued. He stated that he would be available for a trial date the first week of December 2014 or the week of February 17, 2015, but that he would otherwise be unavailable until June 2015.

15. On June 6, 2014, I sent defendant, via his paralegal, a list of the information needed from him for each witness, in order to allow the government to apply for a special benefit parole on their behalf. I also included an example of the form, with the sections that needed information from defendant highlighted. That email is attached hereto as Exhibit F.

16. On June 10, 2014, the Court rejected defendant's motion and noted that defendant had failed to follow the Court's instruction to file a joint status report. I immediately reached

out to defendant again, suggesting that that we make another attempt to agree on a trial date.  If we could not agree, I suggested that we at least make an attempt to file a joint status report. Defendant responded that there would be no agreement, and that if the government wished to file a joint status report, the government should incorporate defendant's position from his rejected motion for an immediate trial or to dismiss the indictment.  Those emails are attached as Exhibit G.

17.  The government informed defendant that the government could not draft his position for him, but that if he would send his position, the government would file it with the government's position in a joint filing.  Defendant subsequently sent his position to the government in the form of a declaration.  That email, including defendant's unsigned declaration, is attached hereto as Exhibit H.  On Friday, June 13, 2014, defendant asked to review the joint filing prior to filing. However, although I worked a number of hours on the filing over the weekend, I was not able to email him a draft until approximately 1:30 p.m. on Monday, June 16, 2014.  I communicated with his paralegals to explain that I was not attempting to incorporate his position into the brief, but would simply attach his declaration, so there was little for him to review.  However, I inquired whether he would prefer that I not file jointly, as he had not been able to review it.  As of the time of filing, there has been no response. I am therefore filing jointly, but note that defendant has not reviewed the government's portion of the filing and may object to calling it a "Joint" status report.

18.  On February 26, 2014 and March 25, 2014, I arranged for defendant to be transported to the US Attorney's Office to review

the original evidence with his paralegal, investigator, and computer forensic examiner. The original physical evidence, such as compact disks, hard drives, suitcases, clothing, etcetera, was available for his review. The defense team asked if they could take photographs of the evidence and I agreed. We also provided defendant with documents, including case agent notes, reports, chain of custody logs, etcetera. I informed defendant that if he found documents that had not been produced that he wished to have, to let me know, and if production was appropriate, I would make the appropriate redactions, Bates number the document, and produce it to defendant. On February 26, 2014, we went through this process with various agent notes - we went through the documents he identified, discussed which ones he actually wanted, and I produced them to defendant after Bates numbering them and redacting victim identifying information, as well as contact information for defendant's ex-wife, etc.

19. After February 26, 2014, evidence review session, defendant objected to having to ask the government to provide him with copies of documents, and asked me to simply re-produce the everything that had been provided for his review. I declined, as we had already produced discovery to defendant twice. However, I renewed my offer to provide defendant with a copy of any document he identified as not previously produced, if production was appropriate, after redacting and Bates numbering the document.

20. Defendant then asked if he could have a photocopier in the conference room so he could make his own copies. I declined, as not all the documents provided for his review were necessarily appropriate for him to possess. Further, I pointed out that any

5

1 | document produced to the defendant should be Bates numbered and
2 | redacted, if necessary.
3 |    21.  At the end of defendant's evidence review session on March
4 | 25, 2014, I learned that defendant had taken my agreement that he
5 | could photograph the evidence as permission to photograph the
6 | documents and records – despite the fact that they were unredacted,
7 | that I had rejected his request that he be allowed to self-help
8 | himself to copies of these documents, and that I had provided him
9 | with a process for obtaining copies of them.
10 |    22.  When I confronted defendant and the defense team regarding
11 | the photographs, I was told that this was a misunderstanding, that
12 | they believed they had permission to photograph the documents as I
13 | had told them I did not object if they photographed the evidence.  I
14 | believed that this request had been clearly limited to the physical
15 | items such as boxes and suitcases, and not documents, as we had had
16 | lengthy discussions regarding how defendant could obtain copies of
17 | the documents and I had expressly informed him that he could not
18 | simply make copies himself.
19 |    23.  I learned that the photographs from the February evidence
20 | review session had already been provided to defendant, although Ms
21 | Caulfield had redacted identifying information of the victim from
22 | the photographs.
23 |    24.  After discussions with the defense team, both in person
24 | and via email, to avoid litigation over these photographs, the
25 | defense team provided me with a copy of the photographs taken during
26 | both days.  I requested that they swear out a declaration that all
27 | photographs had been provided, but no declaration was ever provided.
28 |

25. I reviewed the photographs from the first day with Ms Caulfield to ensure that all victim information was redacted from them. I identified a number of photographs where victim information had not been redacted; Ms Caulfield subsequently informed me that she had retrieved the unredacted photographs from defendant.

26. Although I originally offered to review the photographs from the second day, as well, and redact and Bates number them, when I actually received the photographs they numbered more than 1,000. I believe that defendant had used the photographs to help himself to the thing I had already stated he could not have - a full reproduction of the documents, regardless of whether the documents had already been produced to him and regardless of any redactions that should be made. I therefore proposed, instead, that defendant could have the photograph of any document that had already been produced, provided that his team first made any redaction that had been made to the document when it was produced to him in discovery. I also invited the defense team to identify any photograph of any document not already produced to defendant; I would review these documents to determine whether the government had any objection to defendant having it, and whether any redactions must be made. If the government determined that the defendant could not have the photograph of the document, it would not be provided to defendant except on order of the Court.

27. Since then, the defense team has not identified to me any photograph of any document that was not already produced in discovery, that they wished to provide to defendant. It is therefore my understanding that no photograph of any document not already produced to defendant in discovery has been provided to him.

1  As we worked this dispute out among ourselves I elected not to file
2  anything with the Court regarding the incident.  However, I am
3  including it in this declaration so that the fact the defense team
4  has the photographs, as well as the defense team's agreement that
5  //

defendant will not be provided with the photographs except as agreed in paragraph 26, above, is part of the record.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California on June 6, 2014.

_____
JOEY L. BLANCH